### SWANSON et al. v. PEEL et al.

No. 5276—Opinion Filed Nov. 23, 1915.

Rehearing Denied Jan. 11, 1916. Second Petition for Rehearing Denied July 25, 1916.

(158 Pac. 564.)

**1. Trial—Instructions—Application to Case.**

S. and H., by virtue of separate conveyances, were apparently tenants in common of a certain tract of land. The deeds to them were void, and they had no title. S. fraudulently represented to P. that he had and could convey good title, relying upon which P. entered into contract with him for the purchase thereof. S. inquired of H. over the phone what he would take for his interest, and H. replied, fixing a certain sum. On the following day S. presented to H. deeds, which he executed, purporting to convey said lands to one M., and subsequently M. executed conveyance to P. of a portion thereof. H. had no knowledge of the transaction between S. and P., and did not know that M. purposed or had conveyed to P. In an action for damages by P. against S. and H. growing out of the fraud and deceit of S., held error to instruct the jury that if S. acted as the agent of H. in such transaction with P., whether employed to act or known to so have acted, H. was bound by his acts to the same extent as if H. had personally made the false representations.

**2. Principal and Agent—Fraudulent Representations—Exclusion of Evidence.**

Record examined and held error to exclude certain evidence offered by defendants.

(Syllabus by Bleakmore, C.)

Error from Superior Court, Muskogee County; Farrar L. McCain, Judge.

Action by Joseph A. Peel and others against G. M. Swanson and others. Judgment for plaintiffs, and defendant named and another bring error. Remanded.

McCrory & Johns and Crump, Moore & Crump, for plaintiffs in error.

W. P. Z. German, W. W. Noffsinger, and Y. P. Broome, for defendants in error.

Opinion by BLEAKMORE, C. This is an action in damages for fraud and deceit commenced in the district court of Muskogee county on the 1st day of June, 1912, by J. A. Peel, as plaintiff, against G. M. Swanson, P. E. Heckman, Michael McCarty, and P. L. Kepley, defendants. The cause was later transferred to the superior court of said county. The parties are referred to as they appeared in the court below.

The allegations of the petition necessary to a determination of the questions presented here are, in substance, that in March, 1905, the plaintiff met the defendants McCarty and Kepley, who showed him a certain 80-acre tract of land, stating that they, as brokers, had the same for sale, and falsely and fraudulently represented that the same was owned by the defendants Swanson and Heckman, who could convey good title thereto; that McCarty brought the plaintiff to Muskogee and introduced him to Heckman and Swanson, where all of said defendants falsely and fraudulently represented to him that said lands were the allotment of one Stephen Grayson, a Creek freedman, who had died in the year 1902, and that the defendants Heckman and Swanson had purchased the same from the heirs of said Grayson, and that they

could and would convey to plaintiff a good and indefeasible title thereto for the sum of $1,800, provided he would procure the discharge of a certain unexpired agricultural lease held by one William Ligon; that the plaintiff relied upon said representations, and, believing them to be true, was induced thereby to enter into a contract with the defendants for the purchase of said lands in consideration of $1,850, of which $150 was paid to said William Ligon to discharge said lease; that $100 was at the time paid to the defendants, the remainder of the purchase price to be paid when an abstract of title was procured, examined, and passed upon favorably by an attorney; that after said negotiations plaintiff went to his home in Kansas to procure the money to complete the payment of the purchase price of said lands, arranging with certain persons connected with a bank to procure the abstract of title and an attorney's opinion that the title in Swanson and Heckman was good, and instructed such persons that when the abstract and opinion were furnished to pay to Swanson and Heckman the residue of the purchase price, and to receive and deposit the deed to said land in the First National Bank of Haskell, Okla.; that all of said defendants entered into a conspiracy to cheat and defraud the plaintiff by procuring from him $1,700 for the purchase price of said land and $150 to William Ligon for the discharge of said lease; that said sums were paid to the defendant and William Ligon pursuant to said contract and in reliance upon said false and fraudulent representations; that the defendants Swanson and Heckman had no title to said lands; that the allottee, Stephen Grayson, was alive and that the deed from his alleged heirs to them conveyed no title; that plaintiff entered in to the possession of said lands and lived thereon for three years when the allottee of said lands, through his guardian, in December, 1908, began proceedings in ejectment against him, in which judgment was rendered in December, 1909, in favor of said Grayson by virtue of which plaintiff was evicted from the premises in May, 1910; that under color of title and under deeds from and through the defendants, Swanson. Heckman, and McCarty, while in the quiet and peaceable possession of said land, and before he knew of the superior title of Stephen Grayson, plaintiff in good faith made improvements upon said lands of the value of $2,710; that as a part of the conspiracy between the defendants, the defendant McCarty was acting simply as the agent of the defendants Swanson and Heckman in taking a deed to said land from them, to the end that he might convey the same to plaintiff without incurring liability on the part of Swanson

and Heckman; that the value of the land purported to be conveyed to plaintiff was $2,400. There was prayer for the alleged value of the lands and improvements. Upon trial the cause was dismissed as to McCarty and Kepley.

The testimony is voluminous, and we shall advert only to that portion of the record necessary to be considered in determining questions presented by the assignments of error relative to the exclusion of evidence and the giving of certain instructions by the trial court.

It appears that, some time prior to the date plaintiff contracted for the purchase of the land referred to, certain persons had executed a deed to the defendant Swanson, purporting to convey their interest as heirs of Stephen Grayson to 160 acres of land allotted to him, and which was in separate tracts of 80 acres each, embracing the 80 acres described in the petition, and other persons had executed a like deed to the defendant Heckman, and that each of the defendants Swanson and Heckman was claiming title to a one-half interest in the entire allotment. The 80 acres which plaintiff contracted to purchase was occupied by Ligon by virtue of an unexpired agricultural lease. Stephen Grayson, the allottee, was an infant Creek freedman. To his mother there had been born 12 children, one of whom was an elder brother named Stephen Grayson, who had died prior to the time at which he could have been enrolled for the purpose of allotment, and for him, the allottee, Stephen Grayson, is said to have been named. A notice appeared upon the records of the Commission to the Five Civilized Tribes indicating that the allottee himself had died in 1902. The evidence is conflicting as to whether the defendants Swanson and Heckman, in procuring the deeds from the purported heirs of the allottee, acted in good faith, but the only evidence in the case relative to the connection of the defendant Heckman with the transaction with the plaintiff involving said land is that Heckman never saw nor heard of the plaintiff until three or four years thereafter, when he was informed of the ejectment suit brought by the allottee against the plaintiff. At the time of the transactions complained of he did not know the defendants McCarty and Kepley or the lessee, Ligon. When the plaintiff and McCarty and Ligon met the defendant Swanson and the contract was consummated in the execution of a deed by McCarty to him, Heckman was not present. On that day, however, Swanson called him over the telephone and inquired what he would take for his interest in the 160 acres of land, to which Heckman replied that he would take $400. On the same or the following day

Swanson brought to him two deeds purporting to convey the entire 160 acres to the defendant McCarty, one of said deeds describing the particular 80 acres later conveyed by McCarty to the plaintiff. These deeds he executed and in consideration therefor received $400. Heckman had no knowledge of any transaction between the plaintiff and the other defendants. Later without his knowledge McCarty executed the deed to the plaintiff. There is an utter failure to show any conspiracy on the part of Heckman. There was verdict and judgment against Heckman and Swanson for $4,000.

The issue was sharply drawn as to whether McCarty acted as agent of defendants Swanson and Heckman, the plaintiff contending that he bought the land directly from them, and, while their deeds were executed to McCarty, and he alone made the deed to plaintiff, throughout the transaction he was the agent or go-between of his codefendants; defendants, on the other hand, insisting that there was no contract between them and plaintiff, but that Swanson sold the entire 160 acres to Ligon and McCarty, and the deeds, at their request, were for convenience made to McCarty. In support of their theory on this issue defendants offered to prove that of the entire tract which was conveyed to McCarty in consideration of $800, he conveyed one of the 80-acre tracts to one Ford, receiving therefor $2,000, which he retained. This evidence was excluded by the court. We are of opinion that the evidence was competent and material, and its exclusion erroneous.

Defendants complain of the giving of the following instructions:

"(3) The court instructs the jury that if you find from the evidence that Swanson made representations that he had good title to the land in controversy, then all matters concerning the same, assumed by him to be within his knowledge, are false and fraudulent, in the legal sense, if made with intent to deceive J. A. Peel, and if they were untrue and relied upon by said Peel, in making the purchase, to his damage, although said Swanson did not know them to be untrue, if he carelessly and recklessly made the same and an ordinary investigation by said Swanson would have disclosed to him that they were untrue, then, in that case, your verdict should be for the plaintiff, and his damages assessed as herein defined in other instructions."

"(5) The court further instructs you that if you believe from the evidence that defendant G. M. Swanson, in dealing with J. A. Peel, the plaintiff herein, in reference to the sale of the real estate claimed to have been purchased by said Peel from said Swanson, acted as P. E. Heckman's agent, whether

employed so to act or not, or known to have so acted, then P. E. Heckman is bound by the acts of G. M. Swanson in effecting the sale; and if the plaintiff J. A. Peel, was induced to make the contract by a false representation made by G. M. Swanson as to the title of the real estate purchased by said Peel, on which J. A. Peel relied, in contemplation of law, it is the same as if said P. E. Heckman had made such representations personally."

It is urged by plaintiffs that, even if defendant Heckman had not previously constituted Swanson his agent and authorized him to sell the land in question, he adopted and ratified the contract with Peel by accepting $400 and retaining the same after knowledge of the facts. The doctrine is almost universally applied that the principal who ratifies the act of contract of his agent, with knowledge of the facts, must assume responsibility for the instrumentalities through which the result of such act or contract was procured; and, if there were fraud, deceit, or misrepresentation which would have affected the principal had the act or contract been authorized, the principal who ratifies with knowledge must assume responsibility therefor. "And even though he may, at the time of receiving the benefits of the act, have been ignorant of the practices resorted to, still if, instead of attempting or offering to undo the wrong or permitting it to be undone, where it is practicable, he expressly ratifies, or insists upon having or retaining the fruits of, the malpractice of his agent after he is advised of it, he must ordinarily assume the same responsibility for the means by which those fruits were procured which he must have assumed had the act been authorized." Mechem on the Law of Agency, sec. 411; J. I. Case Threshing Mach. Co. v. Lyons & Co., 40 Okla. 356, 138 Pac. 167. This doctrine, however, is not applicable to the defendant Heckman under the facts in the instant case. The only part of the transaction involved in which he participated, or of which he had knowledge or information at the time the $400 was paid to him, was that in which he executed the two deeds to the defendant McCarty, conveying to him by one of said deeds the 80 acres subsequently described in the conveyance from McCarty to plaintiff. In so far as the evidence discloses, there is absolutely no connection between Heckman and McCarty save that of vendor and purchaser at any stage of the entire transaction of which plaintiff complains. It does not appear that Heckman was ever informed that McCarty had attempted to convey the lands to, or that plaintiff was residing upon or had improved the same, until some time in 1909, or that he had knowledge that plaintiff claimed to have

been induced to purchase the same by the fraudulent misrepresentations of any one, until about the time of the institution of this suit. It will be remembered that this is an action for damages growing out of the alleged fraud and deceit practiced in the sale of the land to plaintiff, and that judgment was rendered against Heckman for 10 times the consideration he received for his deeds. To hold him liable for such fraud and deceit, it must appear that by accepting and retaining the consideration for his conveyances to McCarty, he not only ratified the fraudulent and deceitful acts of Swanson, inducing the plaintiff to enter into the contract with him, but also that he knew of and ratified, as that of his agent, the subsequent act of McCarty (whom he knew only as his vendee) in conveying the 80 acres to plaintiff. This transaction between plaintiff and Mc-Carty, evidenced by McCarty's deed, Heckman was powerless to either ratify or disaffirm. It was in no sense his contract. The doctrine of implied ratification is not sufficiently elastic to meet the contention of plaintiffs in this regard upon the facts in the present record.

In the light of the evidence in this case, we are of opinion that the giving of the instructions above set forth was prejudicial to the rights of the defendants, requiring the reversal of the judgment.

It is not deemed necessary to refer to the other assignments of error, as the same questions may not arise upon another trial.

The case should be remanded to the trial court.

By the Court: It is so ordered.